UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| CHRISTY TOLLEY, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| TOWN OF LYNNVILLE, ) | JURY DEMAND |
| TENNESSEE and ) | |
| TIMOTHY TURNER, *in his official* ) | Judge |
| *and individual capacity,* ) | |
| ) | Magistrate Judge |
| Defendants ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Christy Tolley ("Tolley"), by and through counsel, brings this action against the Defendants, Town of Lynnville, Tennessee ("Town") and Mayor Timothy Turner ("Mayor Turner"), in his individual and official capacities, for deprivation of due process under the Fourteenth Amendment; for violations of the First Amendment; for violation of the Tennessee Public Protection Act ("TPPA"); for slander, defamation, and defamation by implication, in violation of Tennessee law; for gender discrimination in violation of the Tennessee Human Rights Act ("THRA"); and, for retaliation in violation of the THRA.

## PARTIES

2. Tolley is a former Town Recorder and Head of Water Department with the Town of Lynnville, Tennessee and is a resident and citizen of Marshall County, Tennessee.

3. Defendant Town of Lynnville, Tennessee is a municipality located in Giles County, Tennessee.

4. Upon information and belief, Defendant Timothy Turner is the Mayor of Lynnville, Tennessee and is a resident and citizen of Giles County, Tennessee.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 1983.

6. Defendants, acting under color of State Law, intentionally and with reckless disregard, violated Tolley's rights as protected by the Fourteenth and First Amendments of the United States Constitution.

7. The Town is a "person" within the meaning of 42 U.S.C. §1983.

8. Mayor Turner is a "person" within the meaning of 42 U.S.C. § 1983.

9. Defendant is an "employer" as that term is defined by Tenn. Code Ann. § 50-1-304(a)(2).

10. Plaintiff is an "employee" as that term is defined by Tenn. Code Ann. § 50-1-304(a)(1).

11. Tolley's state law claims arise from the same common nucleus of operative facts as her federal law claims, and all of her claims form a single case and controversy under Article III of the United States Constitution over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12. All facts, events, and transactions giving rise to this lawsuit occurred within the geographic environs of the Middle District of Tennessee; thus, venue is proper in this Court.

## FACTUAL ALLEGATIONS

13. Around October of 2020, Tolley began serving in a volunteer position as the Tourism Director for the Town of Lynnville, TN.

14. Tolley was promoted and therein hired to be Head of the Water Department, an employee of the Town, in late summer or early fall of 2021. At all relevant times, Tolley met or

exceeded Defendant's legitimate performance expectations, and she remained dedicated to the Town. Tolley's employment file with Defendant has no record of disciplinary actions, write-ups, counseling memorandums, or performance improvement plans.

15. Around February or March of 2022, Tolley also became the Town Recorder or Town Recorder as outlined in the Town Charter. Part of her job duties included being present at meetings and keeping proper records for the Town. A main duty of Tolley's was to ensure that all laws, ordinances, statutes, charters, etc. were properly followed. Many of Tolley's job duties also coincided with typical duties of a Town or City Manager.

16. Around February of 2024, Tolley opened a small business in the Town to provide the community with healthier farm-to-table options. Tolley and her family became well-known in the local community from this as well as from her employment with the Town.

17. Tim Turner was elected Mayor of the Town of Lynnville, TN in the 2024 election. Mayor Turner was sworn into office on August 31, 2024.

18. In the days leading up to Mayor Turner's swearing in, more than one person had come to the Town's offices asking about an employment opportunity that Mayor Turner had recommended to them as Town Recorder, Tolley's position.

19. Tolley had requested to meet with Mayor Turner to discuss her employment, though he refused to meet with her, despite multiple requests to do so.

20. On or about August 31, 2024, Tolley unlocked the office and gave Mayor Turner his set of keys and the password for the Safe. Mayor Turner requested computer logins and passwords from Tolley to which she stated he would have his own login, each staff member has their own login, and there is no master login at the moment as the master login changes when the

Mayor changes. Tolley explained that since Monday was a government holiday, Mayor Turner would receive a master login Tuesday or later.

21. In the few days following Mayor Turner's swearing in, he would not speak to Tolley other than small interactions where he became combative and hostile. Mayor Turner accused Tolley of lying and keeping information from him, such as computer logins and passwords that Tolley did not have. Mayor Turner told other board members and community members this as well.

22. Mayor Turner accused Tolley of leaving out information about a rate study and feasibility study in a report. However, these studies were not part of Tolley's job duties. Mayor Turner told other board members and community members this as well.

23. Tolley was warned by an Alderman of the Town that Mayor Turner intended to fire her.

24. On September 2, 2024, in the Town's local dollar store, Mayor Turner refused to acknowledge Tolley's presence.

25. On September 3, 2024, at a Board meeting, Mayor Turner abruptly and degradingly spoke to Tolley, belittling her in front of the public for most of the meeting. While Tolley was discussing a State-mandated water line survey, the Town's inability to monitor all water meters, the issue of illegal water meters, and the existence of an illegal water line, Mayor Turner placed his hand in front of Tolley's face and interrupted her.

26. Mayor Turner's conduct at this Board meeting was so inappropriate that Vice Mayor Ed Bowman had to intervene and request that Mayor Turner let Tolley speak. Mayor Turner did not treat any males at the Board meeting in such manner, only Tolley, a female.

27. After the board meeting, Mayor Turner gave his contact information and phone number to all Board members and another office worker, but not to Tolley.

28. On that same day, Tolley filed a formal complaint of harassment and hostile work environment from Mayor Turner via email with Mr. Christopher Williams, Town Attorney at that time, as required by policy and procedure. Tolley asked what the next step would be after making her complaint, to which she received no substantive response. The matter was given to an outside attorney, Seth M. Lasater, to conduct an investigation.

29. Throughout her time employed under Mayor Turner, Tolley, a female, would not receive timely responses regarding high importance issues from Mayor Turner; however, male colleagues would be responded to about lesser issues within days. Most days, Mayor Turner would not even make eye contact with Tolley.

30. On September 27, 2024, Mayor Turner placed Tolley on a paid suspension. Mayor Turner made this decision in a private meeting with only Tolley and two Aldermen present in violation of Tennessee's Open Meetings Act, or the "Sunshine Law". This suspension was done out of retaliation for Tolley engaging in a protected activity by filing a formal complaint against Mayor Turner. Tolley was not given the opportunity to defend herself or otherwise be heard regarding her suspension.

31. Tolley was not paid in a timely manner while on suspended leave. Though she was suspended, Tolley still helped the Town when requested to do so, such as when an Alderwoman needed help on a payroll issue.

32. On October 29, 2024, Attorney Lasater completed his report and submitted it to Town Attorney, Mr. Williams. The report states that Tolley had engaged in a protected activity

when she spoke on matters of public concern and spoke of potentially criminal matters of illegal activity at the September 3, 2024, Board Meeting.

33. On that same day, Mayor Turner sent an email that stated how he did not like that Tolley was thinking of budget solutions for the Town. Mayor Turner wrote that Tolley's alleged actions were "at minimum insubordinate."

34. On October 31, 2024, Mayor Turner terminated Tolley without explanation via email. Tolley was terminated out of retaliation for engaging in protected activities.

35. Mayor Turner made false, malicious, and defamatory statements or statements that are defamatory by implication. He has stated to many members of the public that Tolley was fired and that it was her fault for the Town's water issues. Mayor Turner has falsely implied that Tolley had engaged in illegal conduct. His comments, directly or as implied, have accused Tolley of criminal conduct and/or malfeasance in the performance of her job duties.

36. In addition to depriving Tolley of her job, Mayor Turner's defamatory comments have decimated Tolley's reputation throughout the community.

37. Since her termination, Tolley and other town residents have had issues with their water bills. At a recent public city town hall meeting when Tolley asked why these issues with the water system were occurring, Mayor Turner responded, "Ms. Tolley, as you know, we were left with scratch" and that the Town was working their hardest and doing the best they can. Mayor Turner had publicly implied that Tolley had left the Town's water system and files in an unmanageable condition.

38. Since her termination, Tolley has had multiple members of the community enter her business to comment on the Town's water issues and current financial status. Tolley's small business has been impacted by Mayor Turner's statements and actions towards her.

39. Tolley has been damaged as a result of Defendant's actions.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF FOURTEENTH AMENDMENT

40. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through thirty-nine (39) hereof.

41. The Defendants acted under color of state law in carrying out their unlawful actions. Plaintiff, as Town Recorder and Head of the Water Department, has a constitutionally protected property interest in her employment created by virtue of TN Code § 6-4-201 et seq., the Town Personnel Policy, Section 7.7, and Charter of the Town of Lynnville Article VIII, Section 1(b)(1) and Section 2, requiring both notice in writing of all charges, together with an opportunity to respond to the charges.

42. Further, Plaintiff has a constitutionally protected liberty interest in her employment.

43. Plaintiff did not violate any laws or policies under any of her job titles and duties.

44. Defendants deprived Plaintiff of her right to due process by suspending her after holding a private meeting in violation of Tennessee's Open Meetings Act/Sunshine Law instead of allowing her to exercise her right to a pre-adverse action hearing and later terminating her employment.

45. By presiding over the Board meeting regarding Plaintiff's suspension and termination, Defendants denied Plaintiff her right to a meaningful forum, for which her suspension or other disciplinary action could be presented and deliberated impartially, and terminated Plaintiff's employment. Further, Mayor Turner made public stigmatizing statements about Plaintiff that were false.

46. Defendants' unlawful actions were intentional, willful, and in reckless disregard of Plaintiff's rights as protected by the United States Constitution.

47. Plaintiff suffered and continues to suffer damages as a result of Defendants' unlawful actions.

## COUNT II: VIOLATION OF FIRST AMENDMENT

48. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through forty-five (45) hereof.

49. The Defendants acted under color of state law in carrying out their unlawful actions.

50. As Town Recorder, Plaintiff was obligated to ensure all laws, ordinances, statutes, and charters were properly followed.

51. Plaintiff refused to remain silent about illegal water meters and illegal water lines occurring in the Town. These activities were violating regulations meant to protect public health, safety, and welfare.

52. Defendants terminated Plaintiff for speaking of such illegal activities.

## COUNT III: VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT

31. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through fifty (50) hereof.

54. The Defendants acted under color of state law in carrying out their unlawful actions.

55. As Town Recorder for Defendants, Plaintiff was obligated to ensure all laws, ordinances, statutes, and charters were properly followed.

56. Plaintiff refused to remain silent about illegal water meters and illegal water lines occurring in the Town. These activities were violating regulations meant to protect public health, safety, and welfare.

57. Defendants terminated Plaintiff for speaking of such illegal activities.

58. Defendants' unlawful actions were intentional, willful, and in reckless disregard of Plaintiff's rights as protected by the TPPA.

59. Plaintiff suffered and continues to suffer damages as a result of Defendants' unlawful actions.

### COUNT IV: DEFAMATION AND DEFAMATION BY IMPLICATION

60. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through fifty-five (55) hereof.

61. Defendant Mayor Turner has committed the tort of defamation, in order to undermine Plaintiff's credibility and to destroy her reputation among the public and her peers by publishing statements which were false or defaming to Plaintiff and/or publishing statements with reckless disregard for the truth of the statement and/or negligence in failing to ascertain the truth of the statement.

62. Defendant Mayor Turner knew or should have known that these statements were false at the time they were made.

63. Plaintiff is not a public figure.

65. Defendants' unlawful actions were intentional, willful, and in reckless disregard of Plaintiff's rights as protected by Tennessee Common Law.

66. Plaintiff suffered and continues to suffer damages as a result of Defendants' unlawful actions.

## COUNT V: GENDER DISCRIMINATION UNDER THRA

67. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through fifty-nine (59) hereof.

68. Plaintiff has faced disparate treatment in the workplace because of her gender – female. She was treated less favorably than her male coworkers.

69. Defendants discriminated against, harassed, suspended and terminated Plaintiff due to her gender.

70. Defendants' unlawful actions were intentional, willful, and in reckless disregard of Plaintiff's rights as protected by the THRA.

71. Plaintiff suffered and continues to suffer damages as a result of Defendants' unlawful actions.

## COUNT VI: RETALIATION UNDER THRA

72. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs one (1) through sixty-four (64) hereof.

73. Plaintiff engaged in a protected activity as defined in the THRA by filing a formal complaint of harassment and hostile work environment from the Defendants due to her gender with the Town Attorney.

74. Defendants knew Plaintiff had filed a formal complaint.

75. Plaintiff was thereafter suspended and later terminated by Defendants from her position.

76. Defendants' unlawful actions were intentional, willful, and in reckless disregard of Plaintiff's rights as protected by the THRA.

77. Plaintiff suffered and continues to suffer damages as a result of Defendants' unlawful actions.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff, Christy Tolley, respectfully requests that this court enter judgment in her favor against the Defendants, jointly and severally, and award her the following relief:

1. Compensatory damages including but not limited to damages for emotional, mental, and physical distress in an amount to be proven at trial;

2. Reinstatement to her position with concomitant pay, seniority, and benefits or front pay in lieu thereof;

3. Payment of lost wages and benefits;

4. Payment for damages to Plaintiff's reputation;

5. Punitive damages against the Defendants in their individual capacity in an amount sufficient to punish Defendant and deter like conduct in the future;

6. An award of Plaintiff's attorney fees, expenses, and costs, pursuant to 42 U.S.C. § 1988, TPPA, and THRA;

7. Payment of pre and post judgment interest on all sums recoverable;

8. Permanent injunction enjoining Defendants from any acts which further deprive Plaintiff of her constitutional rights;

9. Such further, other, and general relief to which Plaintiff may be entitled.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Rachel Ringer*
Rachel Ringer, TBPR No. 041951
Kyle F. Biesecker, TBPR No. 028872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone Number: (615) 783-2171
Email Address: rringer@bdlegal.com
kfb@bdlegal.com
*Counsel for Plaintiff, Christy Tolley*

## DEMAND FOR JURY TRIAL

Plaintiff, Christy Tolley, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: */s/ Rachel Ringer*
Rachel Ringer, TBPR No. 041951
Kyle F. Biesecker, TBPR No. 028872
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone Number: (615) 783-2171
Email Address: rringer@bdlegal.com
kfb@bdlegal.com
*Counsel for Plaintiff, Christy Tolley*