IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| CHRISTY TOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 1:25-cv-000010 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| TOWN OF LYNNVILLE, | ) | |
| TENNESSEE and TIMOTHY | ) | |
| TURNER, *in his official capcity*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion to dismiss (Doc. No. 23), which is fully briefed (*See* Doc. Nos. 25, 28). For the reasons stated herein, the Motion is **GRANTED** as to the claims brought under federal law and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.    BACKGROUND[1]

This is a civil rights action arising from Plaintiff's employment for Defendant Town of Lynnville, Tennessee ("Lynnville"). In the late summer or early fall of 2021, Lynnville hired Plaintiff to be Head of the Water Department. Around February or March 2022, Plaintiff also became the Town Recorder, as outlined in the Town Charter. Part of her job duties as Town Recorder included: being present at meetings, keeping proper records for Lynnville, and ensuring that all laws, ordinances, statutes, charters, etc. were properly followed. Many of Plaintiff's job duties coincided with typical duties of a town or city manager.

---

[1]    The facts stated herein come from the amended complaint (Doc. No. 20).

Around February 2024, Plaintiff also opened a small business in Lynnville to provide the community with healthy farm-to-table options. Plaintiff and her family became well-known in the local community from this as well as from her employment with Lynnville.

Defendant Tim Turner ("Mayor Turner") was elected Mayor of Lynnville in the 2024 election and sworn into office on Saturday, August 31, 2024. In the days leading up to Mayor Turner's swearing in, more than one person came to Lynnville's offices asking about an employment opportunity Mayor Turner had recommended them for as Town Recorder, Plaintiff's position. Plaintiff requested to meet with Mayor Turner to discuss her employment multiple times, but he refused to meet with her.

On August 31, 2024, Plaintiff unlocked the office and gave Mayor Turner his set of keys and the password for the safe. Mayor Turner requested computer logins and passwords from Plaintiff, and she responded that he and each staff member would have their own logins and there was no master login at that moment because the master login changed when the Mayor changed. Plaintiff explained that Mayor Turner would likely receive a master login on Tuesday since that Monday was a government holiday.

In the days following Mayor Turner's swearing in, he would not speak to Plaintiff other than small interactions where he became combative and hostile. Mayor Turner accused Plaintiff of lying and keeping information from him, such as computer logins and passwords that Plaintiff did not have. Mayor Turner also told this to other board members and community members. Mayor Turner also accused Plaintiff of leaving out information about a rate study and feasibility study in a report. However, these reports were not part of Plaintiff's job duties. Mayor Turner told other board members and community members this as well. An Alderman of Lynnville warned Plaintiff that Mayor Turner intended to fire her.

2

On September 2, 2024, Mayor Turner refused to acknowledge Plaintiff's presence in Lynnville's local dollar store. On September 3, 2024, at a board meeting, Mayor Turner abruptly and degradingly spoke to Plaintiff, belittling her in front of the public for most of the meeting. Plaintiff was discussing a State-mandated and statutorily required water line survey, the Town of Lynnville's inability to monitor all water meters, the issue of illegal water meters, and the existence of an illegal water line. Plaintiff was concerned about the Town of Lynnville's liability but also about the effects that the Town of Lynnville's water department would have on community residents like her. While Plaintiff spoke, Mayor Turner placed his hand in front of her face and interrupted her. Mayor Turner's conduct at this board meeting was so inappropriate that Vice Mayor Ed Bowman had to intervene and request that Mayor Turner let Plaintiff speak. Mayor Turner did not treat any males at the board meeting in such manner, only Plaintiff, a female. After the board meeting, Mayor Turner gave his contact information and phone number to all board members and another office worker, but not to Plaintiff.

On that same day, Plaintiff filed a formal complaint of harassment and hostile work environment from Mayor Turner via email with Lynnville's attorney at the time, Christopher Williams, as required by policy and procedure. Plaintiff asked about the next step after making her complaint, to which she received no substantive response. The matter was given to an outside attorney, Seth M. Lasater, to conduct an investigation.

Throughout her time employed under Mayor Turner, Plaintiff, a female, would not receive timely responses regarding high importance issues from Mayor Turner; however, male colleagues would be responded to about lesser issues within days. Most days, Mayor Turner would not even make eye contact with Plaintiff. Plaintiff did not violate any laws or policies while fulfilling her job duties, and she was never given counsel or assistance for her performance, attitude, or conduct

3

that fell below a desirable level. Accordingly, Plaintiff had no notice that any of her acts, omissions, or behaviors would result in discipline.

On September 27, 2024, Mayor Turner placed Plaintiff on paid suspension. Plaintiff was not provided with written notice of the suspension, only oral notice. Mayor Turner made this decision in a private meeting with Plaintiff and two of Lynnville's Aldermen, in violation of Tennessee's Open Meetings Act. Plaintiff alleges that her suspension was done out of retaliation for her protected activity of filing a formal complaint against Mayor Turner. Plaintiff was not given the opportunity to defend herself or otherwise be heard regarding her suspension. Plaintiff was not paid in a timely manner while on suspended leave. During her suspension, Plaintiff still helped Lynnville, such as when an Alderwoman needed help on a payroll issue.

On October 29, 2024, investigating attorney, Seth Lasater, completed his report and submitted it to Lynnville's attorney at the time, Christopher Williams. The report stated that Plaintiff engaged in protected activity when she spoke on manners of public concern and spoke of potentially criminal matters of illegal activity at the September 3, 2024 board meeting. The same day, Mayor Turner sent an email stating how he did not like that Plaintiff was thinking of budget solutions for Lynnville, and that her alleged actions were "at minimum insubordinate." Plaintiff did not receive any further oral or written reprimands after being suspended. Nor did she receive any written reprimands during her employment.

On October 31, 2024, Mayor Turner terminated Plaintiff without explanation via email. Plaintiff alleges that she was terminated out of retaliation for engaging in protected activities. The same day, Plaintiff reached out the investigating attorney, Seth Lasater, who had prepared the report, inquiring about the appeal process and stating that she felt this was an adverse action, and requesting a copy of the complete investigation and findings. Attorney Lasater responded that

4

Plaintiff would need to seek other counsel on the matter and directed her to request a copy of her complaint and the investigation's findings from Lynnville.

Plaintiff then contacted Vice Mayor Ed Bowman and Alderman June Green asking for an appeal of her termination, but she received no response.

Mayor Turner has stated to many members of the public that Plaintiff was fired and that Lynnville's water issues were her fault. His statements falsely implied that Plaintiff had engaged in illegal conduct and/or malfeasance in the performance of her job duties. Mayor Turner's false statements have decimated Plaintiff's reputation throughout the community.

Since her termination, Plaintiff and other residents of Lynnville have had issues with their water bills. At a recent public city town hall meeting, Plaintiff asked why these issues with the water system were occurring and Mayor Turner responded "[Plaintiff], as you know, we were left with scratch" and that Lynnville was working their hardest and doing the best they could. Mayor Turner's foregoing statements publicly implied that Plaintiff had left Lynnville's water system and files in unmanageable condition.

Since her termination, Plaintiff has also had multiple members of the community enter her business to comment on the Town of Lynnville's water issues and current financial status. Her small business has been impacted by Mayor Turner's statements and actions towards her.

Plaintiff filed the present lawsuit against the Town of Lynnville and Mayor Turner for defamation and defamation by implication (Count IV) and for violating her rights under the First and Fourteenth Amendments (Counts I and II), the Tennessee Public Protection Act (Count III), and the Tennessee Human Rights Act (Counts V and VI).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to a defendant's motion to dismiss so long as they are referred to in the operative complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008); *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011). Here, both parties expressly rely on Lynnville's personal policy, which is also referenced in the amended complaint. Accordingly, the Court considers Lynnville's personal policy without converting the present motion to dismiss into a summary judgment motion.

6

## III.    ANALYSIS

Through the pending motion, Defendants seek dismissal of each of Plaintiff's claims against them. The Court will begin with Plaintiff's claims brought under 42 U.S.C. 1983 for alleged violations of her rights under the First and Fourteenth Amendment. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[ ] and must show that the alleged deprivation was committed by a person acting under color of state law." *Hester v. Chester Cnty., Tennessee*, 162 F.4th 780, 784 (6th Cir. 2025) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Defendants argue these claims fail because the amended complaint fails to plausibly allege a violation of her constitutional rights. For the reasons stated below, the Court agrees.

### A.  Procedural Due Process

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). In the present matter, Plaintiff claims to have been deprived of a property interest in her job and a liberty interest in her reputation.

#### 1. Property Interest

Plaintiff does not have a property interest in her at-will employment under state statute or Lynnville's personnel policy. A property interest must be created by a source of law independent of the Constitution, because "[t]he Constitution does not create property interests." *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 836 (6th Cir. 2025) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "The independent source may be a statute, policy, practice, regulation or guideline." *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991) (citing *Bishop v. Wood*, 426 U.S.

7

341, 347 (1976)); *see also Hasanaj v. Detroit Public Schools Community District*, 35 F.4th 437, 447 (6th Cir. 2022) ("A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances.").

As the Town Recorder and Head of the Water Department, Plaintiff was an at-will employee, without a fixed term or contract and, as such, she had no "reasonable expectation that termination [would] be only for good cause." *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994) (citation omitted). "Tennessee has long adhered to the employment-at-will doctrine in employment relationships" without a contract for a definite term. *Crews v. Buckman Lab'ys Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) (citation omitted). To succeed on a procedural due process claim, Plaintiff must show that an independent source of law gave her an expectation of continued employment for a fixed term or that her termination required good cause. *Hunt*, 24 F.3d 781, 785. Plaintiff relies on Lynnville's personnel policy and a Tennessee statute.

a. Personnel Policy

Lynnville's personal policy does not create an expectation of continued employment for a fixed term, so it does not create a property interest in Plaintiff's job. Indeed, the first section of Lynnville's personal policy provides that:

> Employment with the Town is on an at-will basis. This manual and all other Town manuals do not bestow any property rights to employees regarding employment. This manual is not part of a contract and no employee has any contractual rights to the matters set forth herein.

(Doc. No. 23-2 at 2).

Lynnville's personal policy unambiguously disclaims that it creates a contract or property interest. Plaintiff's citation to Section 7.8 of the policy, which discusses discipline of Lynnville's employees, is to no avail as nothing in that section overrides the plain language of Section 1.1.

8

b. <u>Tennessee Statute</u>

Tennessee Code Annotated Section 6-4-201 provides that: "The board shall appoint a city recorder, who also may be appointed to the positions of finance director or treasurer, or both." There are no words in the statute creating a fixed term contract or reasonable expectation that termination would be only for good cause.

2. <u>Liberty Interest</u>

"Not everything that state law protects creates a liberty interest under the Due Process Clause; people do not have a liberty interest in their 'reputation' alone—even though state defamation law has long sought to preserve that reputation from injurious false claims." *Pichiorri v. Burghes*, 162 F.4th 745, 753 (6th Cir. 2025) (citation modified); *see also Hasanaj*, 35 F.4th at 454 ("A liberty interest in reputation is only sufficient to invoke the procedural protection of the Due Process Clause if combined with some more tangible interests such as employment.") (citation modified). "The Supreme Court has instead established a 'stigma plus' test for asserting a procedural due-process violation based on a state actor's defamatory statements. *Pichiorri*, 162 F.4th at 753.

Here, the Amended Complaint does not plausibly assert a "liberty" interest under the stigma-plus test. Plaintiff alleges Mayor Turner harmed her reputation by telling others in the community that she was fired and that Lynnville's water issues were her fault and making statements publicly that implied she had left the Town's water system and files in unmanageable condition. But she does not identify an adequate "plus" because she had already left Lynnville's employment when Mayor Turner made the alleged defamatory statements about Plaintiff being bad at her job. Thus, Plaintiff cannot and does not allege that Defendants defamed her "in the course of" terminating her employment with the Town. *See Pichiorri*, 162 F.4th at 754.

9

## B. Substantive Due Process

"Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Lifestyle Communities, Ltd. v. City of Worthington, Ohio*, 165 F.4th 1013, 1026 (6th Cir. 2026). A substantive-due-process claim requires a plaintiff to show: (1) they have a constitutionally protected interest, and (2) the government deprived it of that interest through arbitrary and capricious action. *See id*.; *see also Halasz v. Cass City Public Schools*, 162 F.4th 724, 737 (6th Cir. 2025) ("Substantive due process also protects the right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action."). The interests protected by substantive due process are "much narrower than those protected by procedural due process." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003).

"The 'arbitrary and capricious' standard is simply another formulation of, but is no less stringent than, the more traditional 'shocks the conscience' standard." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003); *Kerchen v. University of Michigan*, 100 F.4th 751, 763 (6th Cir. 2024) ("arbitrary and capricious" action, "another formulation" of the "shocks the conscience" standard.); *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019) ("Thus, a plaintiff must show as a predicate the deprivation of a liberty or property interest and conscience-shocking conduct.") (citation modified). Government conduct shocks the conscience when it: (1) infringes on the "decencies of civilized conduct," (2) is "so brutal and so offensive to human dignity," or (3) interferes "with rights implicit in the concept of ordered liberty." *Halasz*, 162 F.4th at 737.

Defendants argue the Supreme Court has not included the right to maintain public employment as a substantive due process right specifically protected under the Fourteenth Amendment and that the Amended Complaint fails to allege any conduct that shocks the

conscience. (*See* Doc. No. 24 at 9-10). According to Defendants, the amended complaint merely challenges the procedures or lack thereof in connection with her termination, which is insufficient to show a violation of substantive due process. In response, Plaintiff agrees that the Supreme Court has not included the right to maintain public employment as a substantive due process right specifically protected under the Fourteenth Amendment. Nevertheless, Plaintiff argues the amended complaint states a violation of her substantive due process rights because her termination was "for reasons that shock the conscience" and/or without a rational basis. (*See* Doc. No. 25 at 12-14). In their reply, Defendants argue Plaintiff's factual allegations in connection with her employment do not rise the level of "conscious-shocking" and that her position is unsupported by case law. (Doc. No. 28 at 2).

Even taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, she has failed to plead facts showing that her termination was abusive or showed deliberate indifference to a substantial risk of serious harm or was otherwise offensive to human dignity. Moreover, it appears undisputed Plaintiff lacks a constitutionally protected interest in maintaining public employment. As such, the Court finds the amended complaint fails to plead a violation of Plaintiff's substantive due process rights.

## C. Free Speech

Defendants argue the Amended Complaint fails to allege violation of Plaintiff's rights protected under the First Amendment because her statements at the September 3, 2024 board meeting were made pursuant to her official duties rather than in her capacity as a private citizen.

Public employees' statements made pursuant to their official duties, rather than in their capacities as private citizens, are not protected by the First Amendment. *See Barton v. Neeley*, 114 F.4th 581, 588 (6th Cir. 2024); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). In conducting

11

inquiry as to whether public employee's statement was spoken as a public employee or as a private citizen for First Amendment purposes, courts look to the "content and context" of the statement, consulting several non-exhaustive factors, including the speech's impetus; its setting; its audience; and its general subject matter. *See Barton*, 114 F.4th at 589 (citing *Fox*, 605 F.3d at 348 and *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017)). "In sum, 'the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question ... is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Id*. (quoting *Lane*, 573 U.S. at 240).

The amended complaint alleges that Plaintiff "was discussing a State-mandated and statutorily required water line survey, the Town's inability to monitor all water meters, the issue of illegal water meters, and the existence of an illegal water line." (Doc. No. 20 ¶ 25). It further provides her reasoning behind these statements: "[Plaintiff] was concerned about the Town's liability but also about the effects that the Town's water department will have on community residents like her." (*Id*.).

Based on the audience, setting, and subject matter, Plaintiff's discussion about Lynnville's legal obligations in connection with the water lines ("State-mandated and statutorily required water line survey") and areas of noncompliance ("the Town's inability to monitor all water meters, the issue of illegal water meters, and the existence of an illegal water line") during the board meeting was an official duty of the Town Recorder. After all, part of her job duties as Town Recorder included being present at meetings and ensuring that all laws, ordinances, statutes, charters, etc. were properly followed. (Doc. No. 20 ¶ 15). Thus, Plaintiff's speech at the board meeting, which addressed Lynnville's legal obligations in connection with the waterlines and

12

areas of noncompliance, was not speech that Plaintiff made as a private citizen, so it cannot give rise to a violation of her rights under the First Amendment, even with all reasonable inferences drawn in Plaintiff's favor.

## IV. CONCLUSION

For the reasons stated herein, the amended complaint fails to state a claim under Section 1983. Accordingly, the motion to dismiss (Doc. No. 23) is **GRANTED** as to Counts I and II.

There being no remaining claims against Defendants arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims for defamation and defamation by implication (Count IV) and for violating her rights under the Tennessee Public Protection Act (Count III) and the Tennessee Human Rights Act (Counts V and VI). *See* 28 U.S.C. § 1367(c)(3); *Osborn v. Haley*, 549 U.S. 225, 245 (2007).

The Clerk is directed to close the file.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE